IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SHEILA HOLMAN                                                          PLAINTIFF

vs.                                  Civil No. 1:21-cv-01036

COMMISSIONER, SOCIAL                                    DEFENDANT
SECURITY ADMINISTRATION

## MEMORANDUM OPINION

Sheila Holman ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Supplemental Security Income ("SSI") under XVI of the Act.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 5.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.**   **Background:**

Plaintiff protectively filed her disability application on March 15, 2019. (Tr. 11). In this application, Plaintiff alleges a disability onset date of March 1, 2012. *Id*. In this application, Plaintiff alleges being disabled due to bipolar disorder, depression, schizophrenia, gunshot wounds, a mild heart attack, and back pain. (Tr. 187). This application was denied initially on

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ___" The transcript pages for this case are referenced by the designation "Tr" and refer to the document filed at ECF No. 10. These references are to the page number of the transcript itself not the ECF page number.

May 3, 2019, and this application was denied again upon reconsideration on August 30, 2019. (Tr. 11).

Plaintiff then requested an administrative hearing, and this hearing request was granted. (Tr. 30-61). Plaintiff's administrative hearing was held on September 8, 2020, and the location of the hearing is listed as "unknown." *Id.* At this hearing, Plaintiff, a witness for Plaintiff, and Vocational Expert ("VE") Kasey Lynn Crawford Suggs testified. *Id.* During this hearing, Plaintiff testified she was fifty-three (53) years old, which is defined as an "person closely approaching advanced age" under 20 C.F.R. § 416.963(d) (2008), and she had at least a high school education. (Tr. 21, Finding 7).

On December 2, 2020, after the administrative hearing, the ALJ entered a fully unfavorable decision denying Plaintiff's application. (Tr. 11-23). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since March 15, 2019, her application date. (Tr. 13-14, Finding 1). The ALJ determined Plaintiff had the following severe impairments: carpal tunnel syndrome (CTS) and depression. (Tr. 14, Finding 2). Despite being severe, the ALJ also determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-16, Finding 3).

In her decision, the ALJ evaluated Plaintiff's subjective complaints and determined her Residual Functional Capacity ("RFC"). (Tr. 16-21, Finding 4). Specifically, the ALJ found Plaintiff retained the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). She is limited to light work due to CTS, and giving benefit of the doubt of her alleged pain from history of gunshot wounds. She is limited to simple unskilled work due to depression.

*Id.*

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW") and the ALJ found Plaintiff had no PRW. (Tr. 21, Finding 5). The ALJ then determined whether Plaintiff retained the capacity to perform other work existing in significant numbers in the national economy. (Tr. 22, Finding 9). Considering her RFC, age, education, and work experience, the ALJ determined Plaintiff retained the capacity to perform the following occupations existing in significant numbers in the national economy: (1) housekeeper/cleaner (light, unskilled) with 453,557 such jobs in the national economy and (2) fast food worker (light, unskilled) with 1,764,939 such jobs in the national economy. (Tr. 22, Finding 9).

Because Plaintiff retained the capacity to perform this other work existing in significant numbers in the national economy, the ALJ determined Plaintiff had not been under a disability, as defined by the Act, from March 15, 2019 (application date) through December 2, 2020 (ALJ's decision date). (Tr. 22, Finding 10).

Plaintiff requested the Appeals Council's review of the ALJ unfavorable disability determination. On June 21, 2021, the Appeals Council declined to review the ALJ's disability determination. (Tr. 1-5). On July 26, 2021, Plaintiff filed the present appeal. ECF No. 1. The Parties consented to the jurisdiction of this Court on July 27, 2021. ECF No. 5. This case is now ready for decision.

**2.    Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2010); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to

support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work

experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

3. **Discussion:**

In her appeal brief, Plaintiff raises eleven claims for reversal: (1) the ALJ improperly considered her function-by-function limitations or restrictions in assessing her RFC; (2) the ALJ improperly evaluated her mental RFC; (3) the ALJ erred in considering her CTS and nerve damage; (4) the ALJ failed to properly analyze the impact of her obesity on her functional abilities; (5) the ALJ erred by finding her back impairment was not severe; (6) the ALJ improperly considered her failure to seek treatment for her gunshot wounds; (7) the ALJ improperly considered her unsuccessful work attempts; (8) the ALJ improperly relied on the fact "no treating source had provided an opinion" regarding her disability; (9) and (10) the ALJ improperly developed the record and instead relied upon her own opinions to assess Plaintiff's RFC; and (11) the system in place for determining disability is "unconstitutionally vague, leaving too much discretion to the ALJs and result in arbitrary and capricious decisions." ECF No. 12 at 1-24.  The Court will consider each of these claims separately.

A. **Claim #1: Function-by-Function Assessment**

Plaintiff claims "the ALJ is required to provide a function-by-function assessment of the most an individual can do despite his/her limitations." ECF No. 12 at 5.  Plaintiff claims the ALJ

did not do so in this case. *Id.* In her RFC assessment, the ALJ found Plaintiff had the following limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). She is limited to light work due to CTS, and giving benefit of the doubt of her alleged pain from history of gunshot wounds. She is limited to simple unskilled work due to depression.

(Tr. 16-21, Finding 4).

Upon review of Plaintiff's briefing in this matter, it is unclear how this assessment does supply a "function-by-function" assessment. Indeed, the ALJ limited Plaintiff to "light work." (Tr. 16, Finding 4). Such "light work" includes the following:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR 416.967(b) (2010).

Such a determination provides a "function-by-function" assessment; and based upon this review and Plaintiff's lack of briefing on this matter, the Court finds no basis for reversal on this issue. *See Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005) (rejecting an argument "out of hand" where a claimant raises a "conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because Vandenboom provides no analysis of the relevant law or facts regarding these listings).

### B. Claim #2: Mental RFC

Plaintiff claims the ALJ erred in considering her mental RFC. ECF No. 12 at 5-9. Plaintiff

specifically claims the following:

> The ALJ does not point to any specific evidence in the record that shows that, despite her major depression, anxiety, chronically impaired insight and judgment, nightmares and trouble sleeping, trouble concentrating and her Cluster B Trait, Sheila is capable of sustaining adequate attendance, concentration, persistence, or pace.

*Id.*

Despite this claim, however, the ALJ found Plaintiff's depression was a medically determinable and severe impairment. (Tr. 14, Finding 5). In assessing Plaintiff's RFC and her depression, the ALJ also properly considered four areas of mental functioning. *Id.* The ALJ properly evaluated Plaintiff's medical records and considered her mental RFC. Notably, on January 9, 2019, following Plaintiff's release from prison, Plaintiff was examined at South Regional Health Center. (Tr. 275-285). Plaintiff was found to have mild anxiety and moderate depression but demonstrated no evidence of psychosis. (Tr. 275-276). The therapist evaluating Plaintiff noted Plaintiff was a strong self-advocate who was actively engaged in seeking disability benefits. (Tr. 277). The therapist also found Plaintiff had a high school education and had no limitation in her learning kills to the extent she wanted to apply herself. (Tr. 277-278). She also later reported on March 14, 2019[2] that Plaintiff only wanted to do "cash jobs" because she was applying for disability: "She wants SSDD benefits she says today and is actively pursuing it as a financial plan and won't work anymore she says except cash jobs like house cleaning." (Tr. 317).

### C. Claim #3: Failure to Consider CTS and Nerve Damage

Plaintiff claims the ALJ erred in considering her limitations in handling, fingering, and reaching:

---

[2] From her appointment on March 14, 2019, her therapist also noted the following: "Sheila wasn't prepared for Therapy today and had to be asked twice to cease a cell phone she was involved in actually in the Waiting Room which prohibits cell phone use due to privacy, etc." (Tr. 317).

7

> The ALJ failed to include limitations in handling, fingering, and reaching to account for the limitations caused by Sheila's carpal tunnel syndrome [CTS] and nerve damage to her arm and failed to provide the required function-by-function assessment.

ECF No. 12 at 9-12.

Upon review of this claim, the Court cannot find a basis for reversal. In her decision, the ALJ found Plaintiff suffered from the severe impairment of CTS. (Tr. 14, Finding 2). The ALJ also found that due to her CTS, she was limited to light work. (Tr. 16-21, Finding 4). The ALJ partly based that determination upon an electromyography (EMG) examination from September of 2020 that showed she had signs of mild CTS in her right wrist and moderate CTS in her left wrist. (Tr. 18, 602). When those results were interpreted by a nurse practitioner, that nurse practitioner noted Plaintiff showed signs of two percent CTS neuropathy bilaterally. (Tr. 18-19, 605). Thus, based upon this review, the Court find the ALJ's assessment of Plaintiff's limitations due to CTS and nerve damage is supported by substantial evidence.

### D. Claim #4: Failure to Consider Obesity

Plaintiff claims the ALJ improperly considered her obesity. ECF No. 12 at 12-13. In her argument, Plaintiff claims the following: "the ALJ acknowledges that Sheila is obese with a BMI of 32.3" but did not do the proper function-by-function analysis. *Id.* With this argument, Plaintiff is again claiming the ALJ did not do a proper function-by-function analysis. *Id.* As recognized above, the Court finds that argument is without merit; thus, the Court will not address this issue further.

As a final note, however, the Court finds Plaintiff did not allege in her application documents or at the administrative hearing that she was functionally restricted due to obesity. (Tr. 30-61, 62, 65). Thus, the ALJ was not required to consider this issue. *See Pena v. Chater,* 76 F.3d

906, 909 (8th Cir. 1996) (noting that the ALJ is under no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability") (internal quotations omitted).

### E.  Claim #5: Impact of Back Pain

Plaintiff claims the ALJ erred in considering her back pain and finding it was non-severe. ECF No. 12 at 13-16.  Contrary to that assertion, however, the ALJ did consider the treatment records and opinions of both Dr. Semnani and Dr. Romero when assessing Plaintiff's alleged symptoms of back pain. (Tr. 17-18).  The ALJ also recognized the following:

> The claimant reported improvement in her pain with medications.  (14F/2) There is no indication that any treating source has imposed any significant functional limitations, and no indication that the claimant's impairments would preclude all work.

(Tr. 21).  Based upon this review, the Court finds the ALJ properly considered her back pain, and the Court finds no basis for reversal on this issue.

### F.  Claim #6: Treatment for Gunshot Wounds

Plaintiff claims the ALJ improperly considered the fact that she sustained gunshot wounds in 1992 but did not seek treatment until 2018.  ECF No. 12 at 16-17.  In her decision, the ALJ made the following finding:

> The claimant's allegations of disability are not consistent with the record.  She alleges disability as of March 1, 2012, and attributes a lot of her symptoms to the gunshot wounds she sustained in 1992.  However, there is no indication that she sought, nor received treatment until January 2018.  Such action is not consistent with conditions that are so severe as to be disabling.

(Tr. 21).  Upon review, the Court finds no basis for reversal on this issue.  The ALJ based her RFC determination upon a number of findings, including this finding.  Such a determination was entirely proper.  *See Choate v. Barnhart,* 457 F.3d 865, 872 (8th Cir. 2006) (finding an ALJ may

properly consider the claimant's noncompliance with a treating physician's directions, including failure to seek treatment).

### G. Claim #7: Unsuccessful Work Attempts

Plaintiff claims the ALJ improperly considered her unsuccessful work attempts. ECF No. at 17. In her decision, the ALJ noted the following regarding Plaintiff's work attempts:

> Records indicate the claimant worked prior to and after her application date. At a follow-up appointment at South Arkansas Regional Health Center on February 26, 2019, which was prior to her application date, the claimant reported that she was "cleaning houses and she was good at it." (1F/31) When seen again on April 18, 2019, the claimant again reported that she was working cleaning houses. (6F/5) On June 20, 2019, the claimant again reported that she was working and was proud of how she cleaned the rooms in the motel, as she cleaned her own house and she considered herself a good housekeeper. (9F/5-6) Further, records indicate the claimant was seen on June 30, 2020, for complaints of pain in her fingers when working. According to her, she had been working at one of the fast food restaurants in town as maintenance. Otherwise, she has no other complaints (14F/12). Such action is not consistent with disabling impairments.

(Tr. 21). Such a determination and consideration of Plaintiff's work attempts is entirely proper. *See Piepgras v. Chater,* 76 F.3d 233, 236 (8th Cir. 1996) (recognizing a wide range of activities, including working two days a week, supports a finding of no disability).

### H. Claim #8: Functional Limitations

Plaintiff claims the ALJ improperly relied upon the fact that "no treating source has imposed any significant functional limitations" on her. ECF No. 12 at 18. Upon review, the ALJ did consider this fact as follows: "There is no indication that any treating source has imposed any significant functional limitations, and no indication that the claimant's impairments would preclude all work." (Tr. 21).

Such a determination, when coupled with the ALJ's full consideration of Plaintiff's medical records and all other evidence in the record, is entirely proper. *See Anderson v. Shalala,*

51 F.3d 777, 779 (8th Cir. 1995) (recognizing the ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations). Indeed, this was just one factor, in addition to others, that the ALJ considered when assessing Plaintiff's RFC.

### I. Claims #9 & 10: Development of the Record

With Claims #9 and #10, Plaintiff argues the record is not fully developed, and the ALJ based her RFC determination upon an incomplete record. ECF No. 12 at 18-20. Plaintiff claims "the ALJ relied solely on her own interpretation of the medical evidence to develop the RFC" because the ALJ did not properly develop the record. *Id.*

Upon review, to be entitled to a remand for further record development, Plaintiff must demonstrate prejudice. *See Onstad v. Shalala,* 999 F.2d 1232, 1234 (8th Cir. 1993) (holding "absent prejudice or unfairness, we will not remand"). Here, Plaintiff has made no such demonstration. Accordingly, the Court finds no basis for reversal on this issue.

### J. Claim #11: Agency's Regulatory Framework

As her final argument, Plaintiff appears to claim that the entire disability system is flawed because "the agency's process for determining disability is arbitrary and capricious and that similarly situated claimants are being subjected to unequal treatment." ECF No. 12 at 22. Upon review of this claim, however, Plaintiff has not identified any particularized injury and a causal relationship between the injury and the challenged conduct. Plaintiff also cannot show a likelihood that the purported injury would be redressed by a favorable decision.

Further, in the briefing, Plaintiff's attorney makes several claims regarding the disability system, and these unsupported statements by Plaintiff's attorney should not be considered to be evidence and are not relevant to the Court's review of the administrative decision at issue. Such a

11

review is restricted jurisdictionally under § 405(g) to "the evidence upon which the findings and decision complained of are based."

**4.    Conclusion:**

Based on the foregoing, the undersigned finds the ALJ's disability determination is supported by substantial evidence in the record and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 14th day of March 2022.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE